# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

WALDENA CHASE,

     Plaintiff,   Case No. 13-12062
              Hon. Judith E. Levy
v.            Mag. Judge Michael J. Hluchaniuk

CAROLYN W. COLVIN
ACTING COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10]

Plaintiff Waldena D. Chase ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the Commissioner of Social Security's ("Commissioner") final denial of her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Cross motions for summary judgment were filed. (Dkts. 10& 13). For the reasons set forth below, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the

Commissioner's final decision adopting the Administrative Law Judge's ("ALJ") findings is affirmed.

## I.    Background

Plaintiff, born August 27, 1981, was 39 years old at the time she filed for DIB.  (Dkt. 8-2, Tr. 44).  She completed high school and some technical college classes, and she previously worked as a clerk in medical offices.  (Dkt. 8-2, Tr. 46-49).  Her application for DIB alleges disability, with an onset date of December 12, 2009, as a result of lupus, osteoarthritis, cervical disc herniation, and lumbar disc herniation. (Dkt. 8-2, Tr. 102). Plaintiff testified that she: (1) suffers from chronic fevers and daily exhaustion; (2) is only able to read for short periods of time due to severe neck pain; (3) has difficulty driving due to neck limitations; (4) is unable to pay bills or watch movies due to difficulty concentrating; (5) has difficulty sleeping; (6) has high blood pressure and swollen fingers; and (7) headaches and dizziness. (*Id.*)

Despite her alleged physical impairments, plaintiff reported being able to: (1) take care of her household by cleaning, cooking, doing laundry, and helping her children with their homework; (2) prepare her children for and driving them to and from school; (3) shop for groceries

and other necessities; (4) use her computer for at least an hour at a time; (5) watch television; (6) talk on the telephone; and (7) attend most of her son's basketball games during the winter. (Dkt. 8-6, Tr. 181-84) During the period in question, plaintiff also applied for and received unemployment benefits, claiming that she was ready and willing to work. (Dkt. 8-5, Tr. 16, 149-52). On January 19, 2011, plaintiff filed an application for DIB, alleging disability with an onset date of December 12, 2009.  (Dkt. 8-2, Tr. 14, 142-48).

Plaintiff's initial DIB claim was denied by the Disability Examiner on August 9, 2011.  (Dkt. 8-2, Tr. 14, 111-15). The Examiner recognized that plaintiff was suffering from systemic lupus erythematosus, essential hypertension, osteoarthritis of the lumbar and cervical spine, and from migraines, but plaintiff's claims were found to be only partially credible.  The Examiner noted that there was no evidence of end organ damage, no evidence that plaintiff used an assistive device to walk, and no history of ER visits for the migraines.  The Disability Determination Explanation (DDE) concluded that plaintiff's condition results in some limitations in her ability to perform work related activities.  However, these limitations do not prevent her from

performing past work as a medical clerk, and she is able to work for up to eight hours per day.

Plaintiff thereafter filed a request for an administrative hearing, which was held on May 16, 2012, before Administrative Law Judge Patricia S. McKay. (Dkt. 8-4, Tr. 118-19; Dkt. 8-2, Tr. 14, 38-101). Both plaintiff, who was represented by counsel, and a vocational expert ("VE") appeared and testified at the hearing. (*Id*.) On June 5, 2012, Judge McKay denied benefits and issued an unfavorable decision that found plaintiff not disabled. (Dkt. 8-2, Tr. 11-21). Like the initial DDE, Judge McKay found that plaintiff had conditions that limited her ability to work, but ultimately found that she was capable of performing past relevant work for up to eight hours per day, and consequently was not disabled. On April 16, 2013, the Appeals Council denied plaintiff's request for review, rendering the ALJ's earlier decision the final decision of the Acting Commissioner. (Dkt. 8-2, Tr. 1-6). Plaintiff filed for judicial review of the Acting Commissioner's decision on May 9, 2013.

## II.   Analysis

### A. Standard of Review

An applicant who is not satisfied with the Commissioner's final decision may obtain review in federal district court.  42 U.S.C. § 405(g).  The district court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).  The court may affirm, modify, or reverse the Commissioner's decision, and may also choose to remand the case for rehearing where appropriate.  42 U.S.C. § 405(g).

The Commissioner's findings of fact are given substantial deference on review, and are conclusive if supported by substantial evidence.  *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994); 42 U.S.C. § 405(g).  Substantial evidence is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  If there is substantial evidence to support the Commissioner's decision, the district court must affirm it even if substantial evidence also supports the contrary conclusion.  *Bass*

*v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (explaining that if the decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently… and even if substantial evidence also supports the opposite conclusion").

When deciding whether there is substantial evidence to support the Commissioner's factual findings, the district court is limited to an examination of the record and should consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  However, neither the Commissioner nor the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  The district court also does not "resolve conflicts in evidence, or decide questions of credibility," but defers to the Commissioner on such matters.  *Bass*, 499 F.3d at 509.

## B. Legal Framework for Disability Determinations

Pursuant to the Social Security Act, only those who have a disability may claim Disability Insurance Benefits. 42 U.S.C. §

423(a)(1)(E). Disability, as defined by the Social Security Act, is the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which lasted or can be expected to last for a continuous period of at least twelve months.   42 U.S.C. §§ 423(d)(1)(A),   1382c(a)(3)(A);   20   C.F.R.   §   416.905(a).   The Commissioner's regulations provide a five-step sequential analysis to determine disability:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.

The claimant has the burden of proof for steps one through four; at the fifth step, the burden shifts to the Commissioner. *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

## C. The Commissioner's Finding That Chase Was Not Disabled is Supported by Substantial Evidence.

In this case, the ALJ concluded at step four that Chase was not "disabled," based on the finding that Chase retained a residual functional capacity ("RFC") that would allow her to perform her past relevant work as an office manager, receptionist, or medical billing clerk. Plaintiff disagreed and argued that: (1) the ALJ failed to give proper weight to her treating medical sources; (2) the ALJ failed to properly assess her credibility, limitations, and complaints of pain; (3) the testimony given by the vocational expert demonstrates that she is not able to perform work in a competitive work setting; and (4) the Commissioner's decision is not supported by substantial evidence. (Dkt. 8-2; Dkt. 10).

### 1. Plaintiff's Medical Sources and Subjective Complaints

Plaintiff argues that the ALJ did not properly assign Dr. Morton's and Dr. Femminineo's opinions controlling weight, and that the ALJ did not consider all of the factors outlined in 20 C.F.R. § 404.1527(d). These objections are without merit.

The Social Security Administration ("SSA") has issued regulations providing that so long as a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record[,]" it will receive "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   Section 404.1527(c)(2) makes clear that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it] gives [each claimant's] treating source's opinion."

Even when treating physicians are not given controlling weight, the ALJ evaluates their opinions by considering the following six factors: "(1) length of the treating relationship and frequency of examination; (2) nature and extent of the treating relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors

that tend to support or contradict the medical opinion." *Butler v. Barnhart*, 353 F.3d 992, 1003 n.7 (D.C. Cir. 2004) (citing 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6)).

### a. Dr. Morton's Opinion

Although the ALJ acknowledged that Dr. Morton was plaintiff's treating physician, she gave little weight to Dr. Morton's medical opinion. (Dkt. 8-2, Tr. 17-21). This was appropriate because the ALJ found that Dr. Morton's opinion was contradicted by substantial evidence documenting signs of improvement as well as the claimant's own reports of her daily activities, and furthermore, that Dr. Morton was not an expert in the area of disability determinations.

Dr. Morton opined, on Feb. 24, 2012, that plaintiff was unable to be gainfully employed due to her symptoms. Dr. Morton has been regularly treating plaintiff since 2008, and he specializes in the diagnosis and medical management of people with arthritis-related conditions including degenerative arthritis. (Dkt. 8-7, Tr. 275). Dr. Morton concluded:

> [T]he severity of [plaintiff's] continual symptoms that she complains about on a chronic basis makes me think that she is unable to be gainfully employed at this time, and I would

not anticipate any significant improvement in the near or distant future.

(*Id.*)

Dr. Morton's opinion, however, was contradicted by treatment notes documenting signs of improvement. After plaintiff was instructed to participate in a physical therapy program to address her osteoarthritis in October 2009, for example, plaintiff was discharged in December 2009 for having partially met her medical goals. (Dkt. 8-7, Tr. 218-19). Treatment notes also indicate that she increased her cervical range of motion by ten degrees such that she could flex her neck to do household chores. (Dkt. 8-2, Tr. 19). Her pain also decreased to 3 on a scale of 1 to 10. (*Id.*).

Further, Dr. Morton indicated that his opinion was based on the plaintiff's subjective complaints, rather than on his previous reports of her progress and daily activities. (Dkt. 8-7, Tr. 275). A patient's subjective complaints are not sufficient to establish a physical or mental impairment. *See* 20 C.F.R. § 404.1528; *Durio v. Comm'r of Soc. Sec.*, 1996 WL 169362 at *5 (6th Cir. 1996) (treating physician's report not entitled to deference where it "appears to be a characterization of the

plaintiff's complaints, rather than the results of any independent medical evaluation.")

### b. Dr. Femminineo's Opinion

The ALJ also appropriately assigned Dr. Femminineo's opinion little weight because his opinion was, similarly, inconsistent with treatment records and reported activity, as well as the fact that Dr. Femminineo was not an on-going treating source. (Dkt. 8-2, Tr. 20).

Dr. Femminineo opined that plaintiff's pain and other symptoms were severe enough to constantly interfere with the attention and concentration needed to perform even simple work tasks. (Dkt. 8-2, Tr. 19). He estimated that plaintiff was able to sit for thirty minutes at a time for a total of four hours. (*Id.*).

Dr. Femminineo's opinion, however, was based on a one-time evaluation, and as such, did not warrant more weight due to the nature of the examining relationship and the length and frequency of the treating relationship between him and plaintiff. 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6); *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (ALJ appropriately denied giving

treating physician's opinion because the physician was a one-time treating source.)

Accordingly, the Court agrees with the Commissioner's decisions to grant little weight to either of these doctor's opinions.

## 2. Supporting Evidence of Residual Functioning Capacity

### a. Performance of Daily Activities

Plaintiff's range of daily activities further supports the Commissioner's evaluation of the medical opinions. Plaintiff testified that she took care of her household by cleaning, cooking, doing laundry, and helping her children with their homework. (Dkt. 8-7, Tr.181). She helped her children got ready for school, and she attended most of her son's basketball games during the winter. (Dkt. 8-7, Tr. 184). These activities undermine Dr. Morton's opinion of completely debilitating limitations. *See Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (providing that an ALJ may consider household and social activities in evaluating complaints of disabling pain or symptoms.)

### b. Vocational Expert's Testimony

The ALJ also appropriately relied upon the RFC assessment of the VE. Based on plaintiff's subjective complaints alone, the VE conceded

that all of plaintiff's past work would be eliminated and she would be precluded from performing any relevant employment. The VE testified, however, that once objective evidence was included in her analysis, plaintiff would only be precluded from performing the duties of her most recent job and would be able to perform other relevant work. (Dkt. 8-2, Tr. 20). She clarified that the available jobs would not require more than occasional climbing of stairs, kneeling, stooping, and other actions that were within the functional capacity of plaintiff to perform in a workplace setting. The VE concluded that plaintiff's limitations allowed her to be employed in any one of approximately ten thousand clerical jobs in the state, or any one of about ten thousand low-skilled service jobs in the state. (Dkt. 8-2, Tr. 89). The ALJ found the VE's testimony to be persuasive and well-supported.

### c. Collection of Unemployment Benefits

Plaintiff also collected unemployment benefits from the 2nd quarter of 2010 to the 3rd quarter of 2011, overlapping with the period that she claims to be disabled. The Sixth Circuit has found that "applications for unemployment and disability benefits are inherently inconsistent" because collecting unemployment benefits presumes a

readiness and willingness to work. *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir.2004), (citing *Kinsella v. Schweike*r, 708 F.2d 1058, 1059 (6th Cir.1983).

## III.   Conclusion

The Court finds that, because the medical evidence plaintiff relies upon is not dispositive, and because plaintiff's extensive list of reported daily activities presumed a residual functioning capacity for past relevant work, that the Acting Commissioner's denial of benefits is supported by substantial evidence.

Accordingly,

Plaintiff's Motion for Summary Judgment is DENIED,

Defendant's Motion for Summary Judgment is GRANTED, the Acting Commissioner's findings are AFFIRMED, and this case is DISMISSED WITH PREJUDICE.


Dated: December 9, 2014          s/Judith E. Levy_____
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 9, 2014.

s/Felicia M. Moses_____
FELICIA M. MOSES
Case Manager